IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VICTOR MATUBANG, | ) Civ. No. 09-00130 ACK-KSC |
| | ) Civ. No. 10-00173 ACK-KSC |
| Plaintiff, | ) (Consolidated) |
| | ) |
| vs. | ) |
| | ) |
| CITY AND COUNTY OF HONOLULU, ET | ) |
| AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER (1) GRANTING THE CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO ANY CLAIMS FOR PUNITIVE DAMAGES AGAINST THE CITY, (2) GRANTING IN PART, AND DENYING IN PART, THE CITY'S MOTION FOR SUMMARY JUDGMENT AS TO THE REMAINING CLAIMS, (3) GRANTING PLAINTIFF'S MOTION TO CONSOLIDATE TWO CIVIL CASES, (4) DENYING PLAINTIFF'S MOTION FOR AN ENLARGEMENT OF TIME TO SERVE OFFICER TAKEHARA, AND (5) DENYING OFFICERS TAKEHARA AND EAGLE'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS**

**PROCEDURAL BACKGROUND**

On March 27, 2009, Plaintiff, Victor Matubang, filed a complaint ("Complaint") against, inter alios, the City and County of Honolulu ("City") and Honolulu Police Department ("HPD") Officers Kevin Takehara ("Officer Takehara")[1/], in both his individual and official capacity, and Joshua Eagle ("Officer Eagle")[2/], in both his individual and official capacity

---

[1/] Plaintiff's complaint incorrectly spells Officer Takehara's last name as "Takahara". Defendants have clarified this mistake, and all further reference to Officer Takehara will reflect the correct spelling of his name.

[2/] Plaintiff's complaint only refers to an officer by the
(continued...)

(collectively, "Defendants").  The gravamen of this action is that Officer Takehara used excessive force in arresting Plaintiff, falsely arrested him, and maliciously prosecuted him. Plaintiff alleges a total of eight counts in the Complaint: (1) First and Fourth Amendment Claims under § 1983 (Count I); (2) Fourteenth Amendment Due Process and Equal Protection Claim Under § 1983 and Fourth Amendment (Count II); (3) False Arrest (Count III); (4) Negligence (Count IV); (5) Wanton and Reckless Conduct (Count V); (6) Assault and Battery (Count VI); (7) Respondeat Superior (Count VII); and (8) punitive damages allegations (Count VIII).

On April 20, 2009, the City filed a motion to dismiss Plaintiff's claims for violations of his "Fourth and Fourteenth Amendment right to Due process and Equal Protection of the Law" (count  II), negligence (count IV), and wanton and reckless conduct (count V), pursuant to Fed. R. Civ. P. 12(b)(6) ("City's Mot. to Dismiss").  The Court held a hearing on the City's motion to dismiss on August 17, 2009.  At the hearing, Plaintiff withdrew his negligence claim.

On August 24, 2009, the Court issued an Order Granting in Part, and Denying in Part, the City's Motion for Partial

---

[2/](...continued)
last name of Eagle.  Defendants have identified this officer as Joshua Eagle.  As discussed _infra_, at the hearing on May 3, 2010, Plaintiff agreed to withdraw his claims against Officer Eagle.

Dismissal.  Docket no. 31 ("8/24/09 Order").  Recognizing that
Plaintiff had withdrawn his negligence claim, the Court (1)
granted the City's motion to dismiss Count II of the Complaint
(due process and equal protection) to the extent that it asserts
that Plaintiff's "Fourth . . . Amendment rights to Due Process
and Equal Protection of the Law" have been violated; (2) granted
the City's motion to dismiss Count II (due process and equal
protection) to the extent that it asserts that Plaintiff's
Fourteenth Amendment substantive due process rights have been
offended; (3) denied the City's motion to dismiss Count II (due
process and equal protection) to the extent that it advances an
equal protection claim; (4) granted the City's motion to dismiss
Count V (wanton and reckless conduct), insofar as it advances an
independent claim for punitive damages; and (5) dismissed <u>sua
sponte</u> Count VIII (punitive damages), insofar as it advances an
independent claim for punitive damages.  8/24/09 Order at 15-
16.[3/]

**I. The City's Motion for Judgment on the Pleadings and/or Summary
Judgment**

        As a result of the 8/24/09 Order, the following claims
remain: (1) First and Fourth Amendment Claims under § 1983 (Count

---

        [3/] Because Plaintiff withdrew his negligence claim the Court
(1) denied the City's motion to dismiss Count IV (negligence) as
moot; and (2) Construed the negligence component of count VII
(respondeat superior) as having been withdrawn.  8/24/09 Order at
15.

I)[4/]; (2) Equal Protection Claim Under § 1983 (Count II); (3)

False Arrest (Count III), (4) Malicious Prosecution;[5/] (5) Wanton

and Reckless Conduct (Count V), insofar as the claim is not

derivative of Plaintiff's withdrawn Negligence claim; (6) Assault

and Battery (Count VI); (7) Respondeat Superior (Count VII),

insofar as the claim is not derivative of Plaintiff's withdrawn

Negligence claim; and (8) punitive damages allegations, inasmuch

as Plaintiff advances a claim for punitive damages that is

derivative of another remaining count of the Complaint.

On February 9, 2010, the City filed a motion for

judgment on the pleadings and/or for summary judgment ("City's

MSJ"). Specifically, the City moved for judgment on the

pleadings with respect to any remaining claim for punitive

damages against the City, and for summary judgment as to all of

---

[4/] Throughout the Complaint, Plaintiff alleges unlawful arrest, excessive force, and malicious prosecution. These claims appear to be Fourth Amendment claims brought via § 1983. See Blankenhorn v. City of Orange, 485 F.3d 463, 470-484 (9th Cir. 2007) (holding that the Fourth Amendment encompasses claims for unlawful arrest, excessive force, and malicious prosecution made against police officers via § 1983).

[5/] The Complaint does not allege a separate and distinct claim for malicious prosecution, as Plaintiff has done with his false arrest claim (Count III). The Complaint, however, makes repeated reference to a claim for malicious prosecution, which is embedded in various other counts throughout the Complaint. See Compl. ¶¶ 15-16, 20, 23-24, 31, 48-49. Plaintiff makes reference to malicious prosecution in relation to both his federal and state law claims. Accordingly, as discussed below, the Court construes these allegations as asserting both a Fourth Amendment claim via § 1983 and a state law claim for malicious prosecution.

the other remaining claims.  The City's motion was accompanied by a memorandum in support ("City's MSJ Mem.") and a concise statement of facts ("City's MSJ CSF").

On April 15, 2010, Plaintiff filed a memorandum in opposition to the City's MSJ ("Pl's MSJ Opp."), which was accompanied by a concise counter-statement of facts ("Pl's MSJ Opp. CSF").[6/]

On April 21, 2010, the City filed a reply to Plaintiff's MSJ Opposition ("City's MSJ Reply").

## II. Officers Takehara and Eagle's Motion to Dismiss for Insufficient Service of Process, Plaintiff's Motion for an Enlargement of Time to Serve Officer Takehara, and Plaintiff's Request for Consolidation

Plaintiff filed his Complaint on March 27, 2009, and the City was served on March 30, 2009.  Plaintiff, however, failed to serve Officers Takehara and Eagle.  On June 10, 2009, Plaintiff filed an ex parte motion for enlargement of time to serve Officer Takehara.  See Docket no. 11.  On June 15, 2009, Magistrate Judge Kevin S.C. Chang issued an order granting in

---

[6/] The City requests that the Court strike Plaintiff's opposition to the City's MSJ as untimely.  Pursuant to Rule 7.4 of the Local Rules of the District Court for the Hawai'i ("Local Rules"), the opposition was due not less than 21 days prior to the date of the hearing, which was April 12, 2010.  Plaintiff's counsel represented that he missed the deadline because he was unaware that the newly amended Local Rules, as of December 1, 2009, were in effect.  On account of Plaintiff's late filing, the Court extended the deadline for the City's reply to April 21, 2010.  Accordingly, the Court finds that the City has not been prejudiced by Plaintiff's late filing, and therefore denies the City's request to strike Plaintiff's opposition as untimely.

part, and denying in part, Plaintiff's motion for enlargement of
time to serve Officer Takehara.   Judge Chang's order stated:

> After careful consideration of the Ex Parte
> Motion, the Court GRANTS in part and DENIES in
> part Plaintiff's request.  At present, the 120 day
> time limitation for service set forth in Federal
> Rule of Civil Procedure 4(m) expires on July 15,
> 2009.  The Court finds it appropriate to extend
> the service deadline by 30 days.  The balance of
> the Ex Parte Motion is denied.  If Plaintiff
> continues to experience difficulty serving the
> Complaint upon Defendant Kevin Takahara [sic] <u>as
> the extended service deadline approaches</u>, he may
> seek further relief from the Court.

<u>See</u> Docket no. 12 (emphasis added).   Therefore, Judge Chang

extended the deadline for service of process upon Officer

Takehara until August 15, 2009.   Plaintiff failed to serve

Officer Eagle by July 15, 2009, or Officer Takehara by August 15,

2009, and Plaintiff did not request any additional relief from

the Court.

On February 10, 2010, Police Officer Defendants

Takehara and Eagle filed a motion to dismiss for insufficient

service of process ("Officers' Mot. to Dismiss").[7]   Officers

Takehara and Eagle appeared specifically by and through the

City's counsel for the limited purpose of requesting that the

Court dismiss the Complaint against them for insufficient service

---

[7] Because Officers Takehara and Eagle had not been served,
they also asserted that the Court lacked personal jurisdiction
over the them.  Officers' Mot. to Dismiss Mem. at 4-5 (citing
<u>Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S.
97 (1987)).

of process.  Officers' Mot. to Dismiss at 1.  The Officers'
Motion to Dismiss was accompanied by a memorandum in support of
the motion ("Officers' Mot. to Dismiss Mem.").  The Court set the
hearing on the Officers' motion to dismiss for May 3, 2010, the
same time the Court was scheduled to hear the City's MSJ.

On February 23, 2010, Plaintiff lodged an <u>ex parte</u>
Motion to Serve Defendant Kevin Takehara.  The following day,
Judge Chang issued an order on denying Plaintiff's request, which
stated:

> On February 23, 2010, Plaintiff lodged an Ex Parte
> Motion to Serve Defendant Kevin Takahara [sic].
> The Court DENIES the Ex Parte Motion.  The Court
> previously granted Plaintiff's request for an
> extension of time to serve Defendant Takahara
> [sic] in June 2009.  Despite the problems
> Plaintiff has allegedly encountered in effecting
> service upon Defendant Takahara [sic], Plaintiff
> has not requested any additional relief from the
> Court since June 2009.  Indeed, more than six
> months have lapsed since the expiration of the
> extended service deadline.  The failure to serve
> Defendant Takahara [sic] is now a matter to be
> addressed by Judge Kay on May 3, 2010.  Based on
> the record before the Court, and given that
> Plaintiff initiated this action nearly one year
> ago, it would be prejudicial to grant Plaintiff a
> further extension of time to serve the Complaint
> on Defendant Takahara [sic].

<u>See</u> Docket no. 42 ("2/24/10 Order").  Pursuant to Local Rule
74.1, Plaintiff or his counsel had fourteen (14) days to move for
reconsideration and/or appeal from this order.  Plaintiff did not
move for reconsideration and/or appeal from the 2/24/10 Order
within the required time frame.

Instead, on March 29, 2010, Plaintiff filed a third ex
parte motion for enlargement of time to serve Defendant Takehara,
which was addressed to the District Judge ("Pl's Mot. for
Enlargement of Time").  Plaintiff's motion for an enlargement of
time to serve Officer Takehara was accompanied by a declaration
from Plaintiff's counsel, Andre Wooten ("6/9/09 Wooten Decl.").
The relief requested was identical to the motion that was ruled
on by Judge Chang in his 2/24/10 Order.  The Court set a hearing
on Plaintiff's Motion for Enlargement of Time for May 3, 2010,
the same day as the City's MSJ and the Officers' Motion to
Dismiss was scheduled to be heard.

Also on March 29, 2010, the last day before the statute
of limitations expired on Plaintiff's claim, Plaintiff filed
another complaint against Officers Takehara and Eagle, which was
assigned to United States District Judge J. Michael Seabright
("3/29/10 Complaint").  This complaint was made only against
Officers Takehara and Eagle, and does not appear to allege any
claims that the Court dismissed in its 8/24/09 Order.  However,
on April 5, 2010, Plaintiff filed a First Amended Complaint in
the action before Judge Seabright ("4/5/10 Amended Complaint").[8]

_____

[8] Fed. R. Civ. P. 15(a)(1) provides:

Amending as a Matter of Course.  A party may amend
its pleading once as a matter of course within:

(A) 21 days after serving it . . . .

(continued...)

8

The 4/5/10 Amended Complaint added the City as a defendant, as
well as claims that were previously dismissed by the Court's
8/24/09 Order.[9]   For instance, the 4/5/10 Amended Complaint
includes a claim for negligence (Count IV), which was withdrawn
by Plaintiff in this action at the hearing on the City's motion
for partial dismissal, and a Fourth Amendment "Due Process and
Equal Protection" (Count II) claim, which was dismissed by this
Court in its 8/24/09 Order.[10]

On April 12, 2010, Officers Takehara and Eagle filed an
opposition to Plaintiff's Motion for Enlargement of Time
("Officers' Opp.").

On April 15, 2010, Plaintiff filed an opposition to the
Officers' Motion to Dismiss ("Pl's Opp. to Officers' Mot. to
Dismiss").[11]   In Plaintiff's opposition to the Officers' Motion

---

[8] (...continued)

Fed. R. Civ. P. 15(a)(1).

[9] The 4/5/10 Amended Complaint is practically identical to
the original Complaint filed in this action.

[10] As discussed below, at the hearing on these motions
Plaintiff agreed to withdraw all claims that were dismissed or
withdrawn in relation to the Court's 8/24/09 Order, which
included Plaintiff's negligence claim and Plaintiff's Fourth
Amendment claim based on "Due Process and Equal Protection."  See
5/3/10 Tr. 17:2-18 (rough draft of transcript) ("Tr.").

[11] Similar to Plaintiff's opposition to the City's MSJ,
Plaintiff's Opposition to the Officers' Motion to Dismiss was
untimely.  As noted above, Plaintiff's counsel represented that
he missed the deadline because he was unaware that the newly
(continued...)

to Dismiss, Plaintiff requested that the Court consolidate this case with the case presently before Judge Seabright ("Pl's Mot. to Consol."). By doing so, Plaintiff would have additional time to serve Defendants Eagle and Takehara pursuant to Fed. R. Civ. P. 4(m).

Also on April 15, 2010, Plaintiff filed a fourth <u>ex parte</u> motion for enlargement of time to serve both Officers Takehara and Eagle in the case before Judge Seabright ("Pl's Ex Parte Motion before Judge Seabright"). The next day, on April 16, 2010, Magistrate Judge Barry M. Kurren, the magistrate judge assigned to the case before Judge Seabright, issued an order granting Plaintiff's <u>ex parte</u> motion in the case before Judge Seabright ("Judge Kurren's 4/16/10 Order"). Judge Kurren's 4/16/10 Order granted "an enlargement of time of 60 days to perfect service upon Defendant Kevin Takehara and Defendant Eagle, and the City and County of Honolulu Police Department will cooperate with providing updated information to Plaintiff concerning the two Defendants' last known residential addresses." Judge Kurren's 4/16/10 Order at 1.

---

[11]/(...continued)
amended Local Rules, as of December 1, 2009, were in effect. As with the other reply, the Court extended the deadline for the Officers' reply to April 21, 2010. Accordingly, because the Court finds that the Officers have not been prejudiced by Plaintiff's late filing, the Court declines to strike Plaintiff's opposition to the Officers' Motion to Dismiss as untimely.

On April 21, 2010, Officers Takehara and Eagle filed a reply to Plaintiff's opposition to the Officers' Motion to Dismiss ("Officers' Reply").

The Court held a hearing on all four motions on May 3, 2010.  At the hearing, Plaintiff agreed to withdraw his claims against Officer Eagle.

### FACTUAL BACKGROUND[12]

On March 29, 2008, Plaintiff spent the day playing volleyball at Ala Moana Beach Park in Honolulu.  Compl. ¶ 9. Shortly thereafter, a dispute arose between two groups of people at the park.  Id.  Plaintiff's friend was involved in the dispute, which led to a physical altercation.  Id.  According to Plaintiff, neither Plaintiff nor his friend who was arrested, Jim Jones, took part in the fight.  Id. ¶¶ 9-10.  HPD Officers Takehara and Eagle responded to a report of fighting at Ala Moana Beach Park at about 10:48 p.m.  City's MSJ CSF ¶ 1.

The parties agree on the basic outline of events that occurred on the night of March 29, 2008, but present significantly different accounts of the details.  Both parties agree that Plaintiff was arrested for allegedly having an open container of alcohol in a public park.  Id. ¶ 3; Compl. ¶ 16.

---

[12] The facts as recited in this Order are for the purpose of disposing of Plaintiff's Motion to Dismiss and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Both parties agree that Plaintiff was taken to the ground to effectuate his arrest.  City's MSJ CSF ¶ 5; Compl. ¶¶ 12-13. Following his arrest, Plaintiff was transported to Queen's Hospital for medical treatment.  City's MSJ CSF ¶ 6; Compl. ¶ 14. Plaintiff was treated for an abrasion to the right side of his face and released.  City's MSJ CSF ¶ 6; Pl's MSJ Opp. CSF, Ex. A. Plaintiff was thereafter charged with possessing an open container of alcohol in a public area.  Compl. ¶ 16.  The charge was subsequently dismissed for lack of prosecution.  Id.

Beyond these basic facts, the parties offer drastically different accounts of the events that occurred on March 29, 2008. The Court will present both accounts in turn.  As the City is the moving party, the Court will begin with the City's account of events.

**I. The City's Statement of Facts**

After arriving at Ala Moana Beach Park, Officer Takehara observed a male, who was later identified as Plaintiff Victor Matubang, carrying an open can of Coors Light beer. City's MSJ CSF ¶ 1.  Officer Takehara observed condensation on the outside of the beer can.  Id.  Plaintiff subsequently placed the can of beer on the ground near a walkway.  Id.  Officer Eagle recovered the can of beer, and Officer Eagle informed Officer Takehara that the can was still cold and half way full. Id.  The beer can was submitted into evidence at HPD.  Id.

12

Officer Takehara arrested Plaintiff for possessing an open container of alcohol in a public area, in violation of Section 40-1.1, 20-1.2 of the Revised Ordinances of Honolulu ("R.O."). Id. ¶ 2.[13/]  Officer Takehara instructed Plaintiff to place his hands behind his back, but Plaintiff refused to do so. Id. ¶ 4.  Officer Takehara repeated this command several times but Plaintiff still refused to comply.  Id.  Officer Takehara then took hold of Plaintiff's left arm, and attempted to bring it behind Plaintiff's back.  Id.  While doing this, Plaintiff attempted to yank his arm away.  Id.  Thereafter, Officer Takehara used a one arm takedown on his left arm, and "escorted" Plaintiff to the ground.  Id. ¶ 6.  Officer Takehara placed one handcuff on Plaintiff's left wrist area.  Id.  After Officer Eagle was able to pull Plaintiff's right hand behind his back, both of Plaintiff's hands were handcuffed.  Id.

Following the arrest of Plaintiff and Plaintiff's friend, Jim Jones, Officer Eagle transported them to Queen's

---

[13/] R.O. Section 40-1.2(a) provides:

> Sec. 40-1.2 Prohibition in public areas--
> Exceptions.
>
> (a) No person shall possess, other than in a
> container in the manufacturer's sealed condition,
> intoxicating liquor on any street or sidewalk, or
> in any public park, public playground, public
> school ground, public off-street parking area or
> any building located thereon.

R.O. Sec. 40-1.2.

Hospital for treatment.  Id ¶ 7.  According to Officer Eagle, he heard Plaintiff state that he and Jim Jones had been drinking at the park all day, and that it was Plaintiff's birthday.  Id. Following the arrest, Officers Takehara and Eagle prepared police reports related to the arrest of Plaintiff.  Id. ¶ 10.[14/]

According to the City, neither Officers Takehara nor Eagle had any interaction with Plaintiff prior to March 29, 2008, and neither of them yelled racial epithets or slurs at Plaintiff during the course of the arrest.  Id. ¶¶ 9, 11.

## II. Plaintiff's Statement of Facts

In opposition to the City's MSJ, Plaintiff offers a different account of the events.  Plaintiff's opposition is supported by Plaintiff's own declaration ("Pl. Decl."), as well as the declarations of two friends who were present that evening, Isabelle Jones ("Jones Decl.")[15/] and Elizabeth Cole ("Cole Decl.").  Plaintiff also included documentation of treatment at Queen's Medical Center on March 30, 2008, for an "abrasion to face or neck," as well as his dental records.  Pl's MSJ Opp. CSF, Exs. A & B.  In addition, Plaintiff submitted photographs of himself, which were taken on April 18, 2009, almost a year after the incident, that show the alleged injuries he sustained from

----

[14/] Officer Takehara's police report is included as an exhibit to his declaration.

[15/] Ms. Jones is the wife of Jim Jones, who was arrested along with Plaintiff on March 29, 2008.  Jones Decl. ¶ 15.

the arrest.  Pl's MSJ Opp. CSF, Ex. C; Declaration of Andre Wooten ¶ 4.

   According to Ms. Jones, when the officers arrived at Ala Moana Beach Park, Officer Takehara told everyone to leave right away or else they would be arrested for being in the park past 10 p.m.  Jones Decl. ¶ 6.  According to Ms. Jones, Officer Takehara stated that "somebody has to be responsible for [the fight]" and asked if Jim Jones, her husband and Plaintiff's friend, had started the fight.  Jones Decl. ¶¶ 9-10.  They said he had not, and that he had blood on him because he was one of the guys that helped break up the fight.  Id. ¶¶ 10-11.  Officers Takehara and Eagle proceeded to arrest Jim Jones.  Id. ¶ 14.

   Plaintiff then approached the officers to ask why his friend was being arrested.  Compl. ¶ 10; Pl. Decl. ¶¶ 9-10.  The officers told Plaintiff to leave.  Compl. ¶ 11; Pl. Decl. ¶ 10.  Plaintiff walked away and began packing his belongings.  Pl. Decl. ¶¶ 11-13.  The officers then approached Plaintiff and his friends and again asked them to leave.  Id. ¶ 13; Compl. ¶ 11.  Plaintiff explained to Officer Takehara that his keys were inside his friend's purse and that she was coming back with them.  Pl. Decl. ¶ 14; Compl. ¶ 11; Cole Decl. ¶ 4.  Plaintiff then asked Officer Takehara why his friend was being arrested.  Pl. Decl. ¶ 15-16; Jones Decl. ¶ 18.  In response, Officer Takehara got angry and told Plaintiff he was under arrest.  Pl. Decl. ¶ 16.

Plaintiff's Declaration and the Complaint offer slightly differing accounts of what happened next.  According to the Complaint, Officer Takehara grabbed him and threw him to the ground.  Compl. ¶¶ 12, 22.  Other police officers held Plaintiff on the ground and handcuffed him.  Id.  According to Plaintiff's declaration, Officer Takehara handcuffed Plaintiff while he was standing up and told Plaintiff to get on his knees.  Pl. Decl. ¶¶ 18-19.  Thereafter, the officers slammed him on the ground face down.  Id. ¶ 19.

While Plaintiff was on the ground, Officer Takehara began stomping on Plaintiff's neck and head, causing multiple injuries to his face and head.  Compl. ¶ 12; Pl. Decl. ¶ 20.  Ms. Jones stated that "he was brutally pushed face down on the side walk [sic] by Takehara and another officer . . . [with] him face down hanging half on the side walk and half on the street."  Jones Decl. ¶¶ 20-21.  According to Ms. Cole, "the cop had his knee in [Plaintiff's] back [and] with one hand [the cop] was shoving his face into the concrete."  Cole Decl. ¶ 5.  According to Plaintiff, Officer Takehara then sprayed Plaintiff with pepper spray.  Compl. ¶ 13; Pl. Decl. ¶ 22.  Neither Ms. Cole nor Ms. Jones mention Plaintiff being sprayed with pepper spray.  As a result of these actions, Plaintiff asserts that Officer Takehara

broke one of his teeth[16/] and injured his shoulder.  Compl. ¶ 13;
see also Cole Decl. ¶ 10 ("I saw Victor within two days of his
arrest and he definitely was showing the effects on his face of
having his face being rubbed into the concrete."); id. ¶ 13
("[W]hen I saw him after his arrest at least a quarter or a third
of his tooth was broken.").

According to the Complaint, during this encounter,
Officer Takehara, who is of Japanese descent, yelled racial
epithets and slurs at Plaintiff, a "Filipino citizen."  Compl.
¶¶ 26, 50.  Officer Eagle also yelled racial epithets and slurs
at Plaintiff during the incident.  Id. ¶ 50.[17/]

According to Plaintiff, he was not in possession of a
beer can or any sort of alcohol at the time of his arrest.  Pl.
Decl. ¶ 31; see also Cole Decl. ¶ 9 ("[N]one of us were drinking
beer out of a can.  I never saw [Plaintiff] with any can of beer
that day.").

## LEGAL STANDARDS

### I.   Rule 12(c)

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)")
states, "[a]fter the pleadings are closed but within such time as

---

[16/] Although the Complaint states that Plaintiff broke three
teeth, Plaintiff's opposition clarifies that Plaintiff only broke
one tooth.  Pl's MSJ Opp. at 4.

[17/] Plaintiff's declaration makes no reference to any alleged
racial epithets or slurs directed at Plaintiff.

not to delay trial, any party may move for judgment on the pleadings." When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810.

**II. Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (citation omitted).[18/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller, 454 F.3d at 987.  The moving party may do so with affirmative evidence or by "'showing'—that is pointing

---

[18/] Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.[19] Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See id. at 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[20] The nonmoving party must instead set forth "significant probative evidence" in support of its position. T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

_____

[19] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller, 454 F.3d at 987. When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. Id.

[20] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[21/]   Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.   Anderson, 477 U.S. at 250-51.

### III.   Service of Process

Federal Rule of Civil Procedure 4(c)(1) provides that "[a] summons must be served with a copy of the complaint.   The plaintiff is responsible for having the summons and complaint served [within 120 days after the complaint is filed] and must furnish the necessary copies to the person who makes services." Pursuant to Federal Rule of Civil Procedure 4(l)(1), "[u]nless service is waived, proof of service must be made to the court." Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") provides:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.   But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).   The Ninth Circuit has found it unnecessary "to articulate a specific test that a court must apply in

---

[21/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.   Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

exercising its discretion under Rule 4(m)."  <u>In re Sheehan</u>, 253 F.3d 507, 513 (9th Cir.2001).  This Court has broad discretion when reviewing a motion to dismiss under rule 4(m).  <u>See id.</u>

A plaintiff may demonstrate good cause by establishing the following: "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if the complaint were dismissed."  <u>Boudette v. Barnette</u>, 923 F.2d 754, 756 (9th Cir.1991) (citation omitted).  A plaintiff's showing of good cause, at a minimum, requires a demonstration of excusable neglect.  <u>See id.</u>

Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant to move for dismissal due to insufficient service of process.  When a defendant challenges the sufficiency of service, plaintiff bears the burden of establishing that service was valid under Rule 4 of the Federal Rules of Civil Procedure.  <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir. 2004).

## <u>DISCUSSION</u>

Because Officer Takehara has not yet been served, the motion for judgment on the pleadings and/or summary judgment is made only on behalf of the City.  Accordingly, the Court will first address the merits of the City's MSJ.  The Court will then address the service of process issues relating to Officer

22

Takehara, along with Plaintiff's requests for an enlargement of time to serve Officer Takehara and for consolidation.

## I.  Rule 12(c) Motion

Plaintiff seeks punitive damages against Officer Takehara, as well as the City.  See Compl. ¶¶ 34-37, 50.  As explained in the Court's 8/24/09 Order, Count V appears to allege the factual basis for punitive damages: a wanton or reckless disregard of a duty.  See Ass'n of Apartment Owners v. Venture 15, Inc., 115 Hawai'i 232, 297, 167 P.3d 225, 290 (2007) (explaining that punitive damages may be imposed where "'the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences'" (quoting Masaki v. Gen. Motors Corp., 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989)).

The City now moves for judgment on the pleadings as to any allegations or remaining claims for punitive damages against the City that are derivative of Plaintiff's Section 1983 and/or common law claims.

Punitive damages are not available against a municipality under 42 U.S.C. § 1983 ("§ 1983").  Newport v. Facts Concerts, Inc., 453 U.S. 247, 271 (1981) (municipality is immune

from punitive damages under 42 U.S.C. § 1983).[22/]   Under Hawai'i

law, moreover, municipalities are not liable for punitive damages

from claims based in common law or state tort law.  <u>Lauer v.</u>

<u>YMCA</u>, 57 Haw. 390, 402, 557 P.2d 1334, 1342 (1976) ("Public

policy dictates the conclusion that the City, as a municipal

corporation, should not be held liable for punitive damages.").

In <u>Lauer</u>, the Hawai'i Supreme Court reasoned that because "[t]he

deterrent or retributive effect of punitive damages must be

placed squarely on the shoulders of the wrongdoer," the

municipality comprised of "innocent taxpayers . . . should not be

made to suffer."  <u>Id.</u>

In opposition, Plaintiff concedes that "punitive

damages may not be accessible against a municipality . . . ."

Pl's MSJ Opp. at 13.  Accordingly, because, taking all of

Plaintiff's allegations as true, punitive damages are not

available against the City, the Court grants the City's judgment

on the pleadings with respect to any claims for punitive damages

against the City.

II.  **Summary Judgment**

Having established that the City is entitled to

judgment on the pleadings with respect to Plaintiff's claims for

_____

[22/] Although § 1983 does not permit punitive damages against
a municipality, punitive damages are available against an
official individually.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167
n. 13 (1985).

punitive damages against the City, the Court will now address the City's request for summary judgment with respect to all other remaining claims.  The Court will first address any liability arising out of the alleged constitutional violations (Counts I and II).  The Court will then address the City's potential respondeat superior liability arising out of Plaintiff's state law claims.[23/]

     A.   <u>City's Liability Under § 1983</u>

In Count I of the Complaint, Plaintiff alleges that Defendants intentionally and maliciously sought to deprive or recklessly deprived him of his "First Amendment Right to Free Speech and Fourth Amendment right to be free from illegal searches and seizures."  Compl. ¶ 20.

In Count II of the Complaint, Plaintiff alleges that Defendants intentionally and maliciously sought to deprive or recklessly deprived him of his "Fourteenth Amendment right[] to . . . Equal Protection of the Law."  <u>Id.</u> ¶ 21.  Plaintiff seeks to enforce his constitutional rights via 42 U.S.C. § 1983, which provides an avenue for vindicating deprivations of rights "secured by the Constitution or laws of the United States."  <u>See</u>

_____

[23/] The Supreme Court has expressly stated that § 1983 "imposes liability for violations of rights protected by the Constitution, not for duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles."  <u>Baker v. McCollan</u>, 443 U.S. 137, 146 (1979).

Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 705 (9th Cir. 1989).

> 42 U.S.C. § 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Supreme Court has held that a municipality cannot be held liable pursuant to § 1983 under a theory of respondeat superior liability.  Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); see also City of Canton, Ohio v. Harris ("City of Canton"), 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983.").  Instead, for a municipality to be found liable for a § 1983 claim, a plaintiff must prove

> that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'

Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (internal citation omitted).  To put it differently, municipal liability

under § 1983 may be premised upon an officially promulgated policy; a custom or persistent practice; deliberately indifferent training that is the proximate cause of the violation of the plaintiff's federally protected rights; or a single decision by an official with final decision making authority.  See Monell, 436 U.S. at 695; City of Canton, 489 U.S. 378, Pembaur v. Cincinnati, 475 U.S. 469, 478 (1986); St. Louis v. Praprotnik, 485 U.S. 112 (1988).  In addition, the custom or policy must be the "moving force behind the constitutional violation." Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (quoting Monell, 436 U.S. at 694); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

The Complaint alleges that: (1) Defendants contributed to the violations of Plaintiff's rights "by not properly supervising Defendant KEVIN TAKAHARA [sic] and other police officers," (2) "by not having or enforcing the policies to prevent violations of citizens' civil rights," (3) having a "policy custom and practice of looking the other way and condoning and endorsing such unprovoked [attacks upon defenseless citizens]," (4) that "Deliberately Indifferent management

27

omissions . . . are actually done as part of a system to deny Plaintiff and similarly situated Plaintiffs the Equal Protection of the Law," (5) that the City's "approval of . . . Takahara[']s [sic] . . . false arrest and assault[] upon the Plaintiff in this case and failure to discipline the offending officers, is evidence of a pattern and practice of malicious or deliberate indifference to the pattern of violation of the civil rights of citizens."  Compl. ¶¶ 17, 27, 36, 44-45.  In opposition to the City's MSJ, Plaintiff asserts that the policy in question is the "rubber stamping challenged arrests of young males of color." Pl's MSJ Opp. at 10.

　　　In view of the foregoing, Plaintiff appears to be alleging a policy, custom, or practice of (1) not properly supervising police officers, (2) not enforcing policies to prevent violations of civil rights, (3) looking the other way and "condoning and endorsing unprovoked attacks upon defenseless citizens," (4) "deliberate indifference" in order to deny Plaintiff and other citizens Equal protection, or a pattern or practice of malicious or deliberate indifference to the violation of the citizens' civil rights, and (5) approving false arrests and assaults by police officers, particularly arrests of "young males of color," and failing to discipline offending officers. Thus, all of Plaintiff claims regarding the City's § 1983 liability appear to fall within the "custom or persistent

practice" or "deliberately indifferent training" categories.
Plaintiff has not suggested nor set forth facts that Officer
Takehara's actions were made pursuant to an officially
promulgated policy or that the individual who allegedly committed
the constitutional violation (Takehara) was an official with
"final policy-making authority."  The Court will address each
alleged municipal custom or practice in turn.

> i.   <u>Deliberately Indifferent Training</u>

"[T]he inadequacy of police training may serve as the
basis for § 1983 liability only where the failure to train
amounts to deliberate indifference to the rights of persons with
whom the police come into contact." <u>City of Canton</u>, 489 U.S. at
388.  In response to Plaintiff's allegations of inadequate police
training, the City has come forward with evidence establishing
that the HPD officers undergo extensive training, and that
Officer Takehara took part in this training.

For instance, applicants undergo testing to determine
the applicant's suitability for police work.  City's MSJ CSF ¶
15.  According to the City, each applicant is required to
successfully complete an extensive selection process.  <u>Id.</u>  This
process includes: background and criminal checks, an interview
with a Career Center detective, psychological testing and
interview by a police psychologist, physical trainability test,
truth verification test, and a medical exam.  <u>Id.</u>  Further, all

HPD officers are required to be familiar with the laws governing use of force, and are periodically appraised of, and trained in, developments in this area of the law.  Id. ¶ 16.  Finally, the City notes that HPD is a nationally accredited police force by the Commission on Accreditation for Law Enforcement Agencies ("CALEA").  Id. ¶ 17.

With regard to Officer Takehara's training, the City has set forth evidence that Officer Takehara has been a police officer with HPD since November 1998, and underwent recruit training at the Honolulu Police Academy, graduating in 1999.  Id. ¶ 18, Takehara Decl. ¶ 1.  Further, Officer Takehara has attended annual training every year since graduating from the academy. City's MSJ CSF ¶ 18.  Officer Takehara was aware of the use of force policy and that the use of excessive force is a crime and a violation of HPD's police.  Id.

In opposition, Plaintiff has failed to come forward with any evidence regarding the alleged inadequate training of HPD officers as required by Fed. R. Civ. P. 56(e)(2).[24/]

_____

[24/] Fed. R. Civ. P. 56(e)(2) provides:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered
(continued...)

Plaintiff concedes that he could not retain an expert witness "to further develop his arguments." Pl's MSJ Opp. at 10.  Plaintiff admits a large number of the facts regarding the training of HPD officers, and bases his opposition upon conclusory assertions regarding inadequate training that are not supported by any declarations.  For example, Plaintiff contends Paragraphs 15 and 16 of the City's CSF, which describe the training of HPD officers, are "all self-serving argument and not relevant facts." Pl's MSJ Opp. CSF ¶¶ 15, 17.  To the contrary, however, HPD's training policy is highly relevant and HPD's national accreditation undermines any claim of deliberate indifference by HPD.

Accordingly, because Plaintiff does not allege any facts to support his theory of inadequate training, the Court grants summary judgment in favor of the City with respect to this allegation.

### ii. Not Enforcing Policies to Prevent Violations of Civil Rights

Plaintiff next alleges that the City has a custom or practice of not enforcing policies to prevent violations of civil rights.  Plaintiff does not identify which policies are not being enforced, however the City has come forward with evidence of a

---

[24]/(...continued)
  against that party.

Fed. R. Civ. P. 56(e)(2).

number of policies prohibiting the use of excessive force.
Specifically, the City observes that the use of excessive force
by police officers in the course of their employment is a crime
under Hawai'i law.  City's MSJ CSF ¶ 13.  HPD's policy forbids
unreasonable or excessive force and officers may be disciplined
and/or prosecuted if they are found to have used excessive force
on suspects or arrestees.  Id.

        The City has also established that HPD's policies
require officers to report other officers' misconduct, and
require documentation, medical examination, and treatment of
arrestees who request or require medical attention.  Id. ¶ 14.  A
citizen complaint system exists within the Department.  Id.  If a
complaint is sustained, it is referred to the appropriate level
of discipline.  Id.  Further, HPD has an early warning tracking
system for counseling, retraining, or disciplining its officers
who act inappropriately or illegally, including those who use
excessive force on arrestees.  Id.

        In opposition, Plaintiff has again failed to come
forward with any evidence to establish that HPD has a custom or
practice of not enforcing the above-mentioned policies.  Instead,
in response to the City's evidence of these policies, Plaintiff
states "[h]owever HPD officers knew that they are very [sic]
disciplined and even more rarely prosecuted for it, even if found
liable of it by a civil jury."  Pl's MSJ Opp. CSF ¶ 13.  This

32

assertion is not supported by any declaration as required by Fed. R. Civ. P. 56(e)(2).

As a result, the Court grants summary judgment in favor of the City with respect to any claim by Plaintiff that the City has a custom or practice of not enforcing HPD policies.

### iii. <u>Looking the Other Way and "condoning and endorsing unprovoked attacks upon defenseless citizens"</u>

Plaintiff also alleges that the City has a custom or practice of looking the other way and condoning and endorsing unprovoked attacks upon defenseless citizens.  This allegation is similar to Plaintiff's allegation that the City has a custom or practice of not enforcing its policies.  As with that allegation, Plaintiff has again failed to come forward with any evidence to establish that HPD has a custom or practice of looking the other way.

As a result, the Court grants summary judgment in favor of the City with respect to any claim by Plaintiff that the City has a custom or practice of looking the other way and "condoning and endorsing unprovoked attacks upon defenseless citizens."

### iv. <u>Deliberate Indifference in Order to Deny Plaintiff and Other Citizens Equal Protection, or a Pattern or Practice of Malicious or Deliberate Indifference to the Violation of the Citizens' Civil Rights</u>

Plaintiff also alleges that the City has a custom or practice of deliberate indifference in order to deny Plaintiff

and other citizens equal protection, or a pattern or practice of
malicious or deliberate indifference to the violation of the
citizens' civil rights.   Plaintiff's reference to deliberate
indifference suggests that this claim is partially based on
Plaintiff's inadequate training claim.   See City of Canton, 489
U.S. at 388 ("[T]he inadequacy of police training may serve as
the basis for § 1983 liability only where the failure to train
amounts to deliberate indifference to the rights of persons with
whom the police come into contact.").   As noted above, Plaintiff
does not allege any facts to support his theory of inadequate
training.   Moreover, Plaintiff has failed to come forward with
any evidence of a pattern or practice of malicious or deliberate
indifference to the violation of citizens' civil rights.

Accordingly, because Plaintiff does not allege any
facts to support this theory, the Court grants summary judgment
in favor of the City with respect to this allegation.

v.   Approving False Arrests and Assaults by
Police Officers, Particularly Arrests of
"young males of color," and Failing to
Discipline Offending Officers

Finally, Plaintiff asserts that the City has a custom
or practice of approving false arrests and assaults by police
officers, particularly arrests of young males of color, and
failing to discipline offending officers.   Plaintiff asserts that
complaints of excessive force are rarely sustained by the City's
reviewers.   Pl's MSJ Opp. CSF § 14.   As with Plaintiff's other

34

conclusory allegations, this assertion is not supported by any declaration as required by Fed. R. Civ. P. 56(e)(2).

In his memorandum in opposition to the City's MSJ, Plaintiff raises several new allegations with regard to the City's alleged custom of "rubber stamping challenged arrests of young males of color." Plaintiff asserts that young males of color are charged with spurious crimes, which are then dismissed upon review by the courts. Pl's MSJ Opp. at 11. Plaintiff alleges that of the 23 complaints of excessive, malicious, and abusive force made by citizens in 2004, the City's reviewers only sustained two as valid. Id. Plaintiff asserts that the City's approval of less than 10% of these complaints is unreasonably low. Id.

Plaintiff also claims that "[s]cores of police brutality law suits have been filed against the Defendant City and County of Honolulu," and that "several times that number of complaints of excessive force, unlawful arrest and malicious prosecution have been filed with the City HPD Internal Affairs complaint investigation office." Id at 11-12. Further, Plaintiff alleges that there were "17 police brutality cases filed only in the Federal court in Honolulu from Feb. 2004 through Sept. 2007 against the City of Honolulu s [sic] . . not counting the four suits this attorney has filed representing other Plaintiffs over the years . . . ." Id. at 12. Moreover,

Plaintiff is "still searching" the state court system, but there is "clearly sufficient cases of police brutality [in the state courts]." Id. Plaintiff argues that, between 1989 and 1992, over fifteen years before Plaintiff's arrest, sixty eight officers were disciplined. Id.

As with all of the Plaintiff's allegations regarding an alleged custom or practice, these additional allegations are not supported by declaration as required by Fed. R. Civ. P. 56(e)(2). Moreover, even if supported by a declaration, these allegations are not probative of whether or not the HPD has a custom or practice that was the moving force behind the alleged constitutional violations. That is, these claims may have been frivolous and there is no evidence to show that HPD officers engaged in excessive force. To defeat summary judgment, a nonmoving party must set forth "significant probative evidence" in support of its position. T.W. Elec. Serv. v., 809 F.2d at 630. In this case, Plaintiff has not come forward with any probative evidence of a custom or practice of approving false arrests and assaults by police officers, particularly arrests of "young males of color," and failing to discipline offending officers. As a result, the Court grants summary judgment in favor of the City with respect to this allegation.

   vi.  Conclusion Regarding Plaintiff's § 1983
        Claims Against the City

In summary, even if the Court assumes that Plaintiff was arrested without probable cause or that excessive force was used against him, Plaintiff has utterly failed to bring forth facts that these alleged violations were a result of a custom, practice, or policy of HPD.  A party facing summary judgment is obligated to set forth, by affidavit or as otherwise provided in Fed. R. Civ. P. 56, specific facts showing that there is a genuine issue for trial.  Because the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587.  Therefore, the Court grants summary judgment in favor of the City as to all of Plaintiff's constitutional claims against the City asserted via § 1983.[25/]

---

[25/] Because Plaintiff has failed to come forward with any evidence of a custom or policy that was the moving force behind the alleged constitutional violations, the City is entitled to summary judgment as to all claims made against it via § 1983. Nevertheless, the City's MSJ memorandum contains a separate section requesting summary judgment in favor of the City as to any of Plaintiff's claims based on racial discrimination, which addresses Plaintiff's equal protection claim as against Officer Takehara.  See City's MSJ Mem. 19-21.  In opposition, Plaintiff has come forward with no evidence that Officer Takehara discriminated against Plaintiff on account of his race.  Given the lack of supporting evidence, at the hearing Plaintiff withdrew his equal protection claim based on racial discrimination.  Tr. 17:19-25, 18:1-2.  In the 8/24/09 Order, the Court noted that Plaintiff also appears to characterize his equal protection claim as being based on unique treatment.  "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."  N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).  "In order to claim a violation of
(continued...)

B.    The City's State Law Liability

A municipality is "subject to the state's tort laws in the same manner as any other private tortfeasor." Kahale v. City and County of Honolulu, 104 Hawai'i 341, 346, 90 P.3d 233, 241 (2004).  Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment, even if the foreseeable effects of the acts occur outside the scope of employment. See Wong-Leong v. Hawaiian Indep Refinery, Inc., 76 Hawai'i 433, 438-39, 879 P.2d 538, 543-44 (1994).  Under Hawai'i law, a municipality may be held liable under a theory of respondeat superior for the tortious acts of its agents that are committed with malice within the scope of its agents' employment. See Lane v. Yamamoto, 628 P.2d 634, 636 (Haw. Ct. App. 1981).  "It is well-settled that, under the doctrine of respondeat superior, an employer is held accountable and liable for the negligent acts of its employees; if an employee is immune from suit, then the employer is also immune from suit and cannot be held liable." Reed v. City and County of Honolulu, 76 Haw. 219, 227, 873 P.2d

---

25/(...continued)
equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." Id.  Accordingly, Plaintiff's "class of one" equal protection claim remains.

98, 107 (1994) (citing <u>Hulsman v. Hemmeter Dev. Corp.</u>, 65 Haw. 58, 61-62, 647 P.2d 713, 716 (1982)).

Under Hawai'i law, a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty. <u>Towse v. State of Hawaii</u>, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982). For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. <u>Id.</u> at 631-33, 647 P.2d at 702-03. The existence or absence of malice is generally a question for the jury. <u>Runnels v. Okamoto</u>, 56 Haw. 1, 5, 525 P.2d 1125, 1129 (1974). However, when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions, the court may rule on the existence or absence of malice as a matter of law. <u>See id.</u>

In this case, the City asserts that it is entitled to summary judgment as to Plaintiff's claims based on respondeat superior because Officer Takehara is entitled to a qualified or conditional privilege. City's MSJ Mem. at 22. That is, in order to proceed against Officer Takehara, Plaintiff must allege and demonstrate by clear and convincing proof that Officer Takehara's actions were motivated by malice and not by an otherwise proper purpose. If Plaintiff cannot proceed against Officer Takehara

39

because of a qualified or conditional privilege, the City argues that summary judgment is appropriate as to all claims against the City based on respondeat superior.

Even if Officer Takehara is not entitled to a qualified privilege, the City asserts that it is entitled to summary judgment as to Plaintiff's false arrest and malicious prosecution claims because Officer Takehara had probable cause to arrest Plaintiff.  Probable cause is an affirmative defense to claims for false imprisonment and malicious prosecution.[26/]  See Lopez v. Wigwam Dep't Stores, 49 Haw. 416, 423, 421 P.2d 289, 293-94 (1966) (holding that probable cause is an affirmative defense to a claim of false imprisonment); Myers v. Cohen, 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984) (holding that to establish a malicious prosecution claim, a plaintiff must prove that the prior proceedings were initiated without probable cause).  Thus, the City argues that even if Plaintiff were permitted to pursue his state law claims against Officer Takehara, the City is entitled to summary judgment as to the claims in which the existence of

_____

[26/] The City also asserts that it is entitled to summary judgment with respect to Plaintiff's battery claim, however the City fails to elaborate on its request.  Battery is an unlawful touching of another person without his or her consent.  Pourny v. Maui Police Dept., County of Maui, 127 F.Supp.2d 1129, 1146-47 (D. Haw. 2000).  A police officer is entitled to use such force as is justifiable when making an arrest, thereby making such justifiable touching not "unlawful".  Id.  Presumably, the City is arguing that it is entitled to summary judgment because the arrest was lawful.  Accordingly, this assertion falls within the City's probable cause argument.

probable cause to arrest Plaintiff would bar any recovery against Officer Takehara.  The Court will address each argument in turn.

### i.   Qualified Privilege

For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose.  Towse, 64 Haw. at 631-33, 647 P.2d at 702-03.  In analyzing the qualified privilege, different definitions of malice are employed in relation to different claims.  For claims other than defamation, courts have applied an "actual malice" test.  Awakuni v. Awana, 115 Hawai'i 126, 165 P.3d 1027, 1041-42 (2007) (applying the "actual malice" test in the context of an alleged breach of fiduciary duty); see also Edenfield v. Estate of Willets, No. 05-00418, 2006 WL 1041724, *12 (D. Haw. April 14, 2006) (applying the "actual malice" test in the context of claims for assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress).

When the "actual malice" test is employed, "the phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense."  Awakuni, 165 P.3d at 1042.  In Awakuni, the Hawai'i Supreme Court defined actual malice as "'the intent, without justification or excuse to commit a wrongful act[,]'

41

'reckless disregard of the law or of a person's legal rights[,]' and '[i]ll will; wickedness of heart.'"   Id.

Applying this definition, the City argues that Plaintiff cannot prove by clear and convincing evidence that Officer Takehara acted with malice.  City's MSJ Mem. at 23.  In support, the City offers the declaration of Officer Takehara which states that he had an honest and good faith belief that there was probable cause to arrest Plaintiff for having an open container of alcohol in his possession in a public park.  City's MSJ CSF ¶ 2.  In addition, he declares that he did not bear Plaintiff any malice or intend him any harm or violation of his constitutional rights.  Id. ¶ 11.

In opposition, Plaintiff does not specifically rebut Officer Takehara's declaration.  See City's MSJ Reply at 9 ("Plaintiff has not produced or pointed to any specific fact that shows that . . . Officer Takehara . . . bore him any malice . . . .").  Plaintiff does, however, offer an account of events that infers malice.[27/]  For instance, while Officer Takehara declares he had a good faith belief to arrest Plaintiff for having an open container of alcohol, Plaintiff asserts that he did not have any

---

[27/] Plaintiff, of course, does not have personal knowledge of what Officer Takehara's intentions were, but his intentions may be inferred from his actions.  Moreover, Plaintiff could depose Officer Takehara in an effort to establish that Officer Takehara acted with actual malice.

alcohol in his possession.  Pl. Decl. ¶ 31; <u>see also</u> Cole Decl. ¶ 9.

In addition, while Officer Takehara declares that he "escorted" Plaintiff to the ground, Plaintiff asserts that he was thrown to the ground, after which the officers repeatedly stomped on his neck and head.  Compl. ¶ 12; Pl. Decl. ¶ 20; Jones Decl. ¶¶ 20-21 (stating that "[Plaintiff] was brutally pushed face down on the side walk [sic] by Takehara and another officer . . . [with] him face down hanging half on the side walk and half on the street"); Cole Decl. ¶ 5 (declaring that "the cop had his knee in [Plaintiff's] back [and] with one hand [the cop] was shoving his face into the concrete").  According to Plaintiff, Officer Takehara then sprayed Plaintiff with pepper spray. Compl. ¶ 13; Pl. Decl. ¶ 22.  Viewing the evidence in a light most favorable to Plaintiff, it is possible that Plaintiff could prove by clear and convincing evidence that Officer Takehara acted with actual malice.

Although the Queen's Hospital records indicate that Plaintiff was treated for abrasions only (and therefore potentially undermines Plaintiff's claim of extensive injuries), the other evidence submitted by Plaintiff could be used to establish that Officer Takehara acted with malice.  While the City argues that Plaintiff's allegation that he was sprayed with pepper spray is not credible, at the summary judgment stage, the

43

court may not make credibility assessments or weigh conflicting evidence.  <u>Anderson</u>, 477 U.S. at 249; <u>see also</u> <u>Runnels</u>, 56 Haw. at 5, 525 P.2d at 1129 (noting that the existence or absence of malice is generally a question for the jury).  Accordingly, because there are genuine issues of material fact as to whether Officer Takehara acted with actual malice, the Court denies the City's MSJ insofar as it claims that summary judgment is appropriate because Officer Takehara is entitled to a qualified or conditional privilege.

     ii.  <u>Probable Cause</u>

"Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  <u>United States v. Buckner</u>, 179 F.3d 834, 837 (9th Cir. 1999) (changes in original).  The City asserts that Officer Takehara had probable cause to arrest Plaintiff because he observed Plaintiff holding an open can of beer, in violation of R.O. Section 40-1.2.  City's MSJ CSF ¶¶ 1-2.  Assuming this to be true, there would be no doubt that Officer Takehara had probable cause to arrest Plaintiff.

In opposition, however, Plaintiff disputes that he was in possession of an open alcoholic beverage.  Pl. Decl. ¶ 31 ("I was no where [sic] near a beer can or in possession of any sort of alcohol."); <u>see also</u> Cole Decl. ¶ 9.  Although Plaintiff did

44

not deny Officer Eagle's declaration stating that he heard
Plaintiff admit that he and Jim Jones had been drinking at the
park all day, this apparent admission does not conflict with
Plaintiff's statement that he was not in possession of any
alcohol at the time of his arrest.[28/]  Thus, the fact-finder must
make a credibility determination to decide whether Plaintiff was
in possession of a beer during the time of his arrest, and at the
summary judgment stage the court may not make credibility
assessments or weigh conflicting evidence.  Anderson, 477 U.S. at
249.  Accordingly, because there are genuine issues of material
fact as to whether Officer Takehara had probable cause to arrest
Plaintiff, the Court denies the City's MSJ as to Plaintiff's
claims for false arrest, malicious prosecution, and battery.

        In conclusion, the Court denies the City's motion for
summary judgment as to any state law claims asserted against the
City via a theory of respondeat superior.[29/]

_____

        [28/] However, such a statement may constitute an admission
that Plaintiff was drinking alcohol in the park that day.

        [29/] As noted above, the Complaint makes repeated reference to
a claim for malicious prosecution, which is embedded in various
counts throughout the Complaint.  See Compl. ¶¶ 15-16, 20, 23-24,
31, 48-49.  These allegations appear to state both a Fourth
Amendment claim via § 1983 and a state law malicious prosecution
claim.  See Blankenhorn, 485 F.3d at 482 ("A police officer who
maliciously or recklessly makes false reports to the prosecutor
may be held liable for damages incurred as a proximate result of
those reports.").  However, the Complaint does not make clear
which Defendants allegedly maliciously prosecuted Plaintiff.  For
instance, Paragraph 15 states that "KEVIN TAKAHARA [sic] falsely
                                              (continued...)

## II.   Service of Process

Plaintiff concedes that, as of the date of this order, Officer Takehara has not been served.   This is evidenced by Plaintiff's repeated requests for an enlargement of time to serve Officer Takehara.   "When considering a process defect . . . a district court must first inquire whether a plaintiff has

---

[29]/(...continued)
arrested Plaintiff, maliciously prosecuted him, and falsely imprisoned him."  Compl. ¶ 15.  Paragraph 31, on the other hand, more broadly states, "[t]he Defendants actions were maliciously done to cover up the fact they had committed an illegal assault upon him, Defendants had Plaintiff charged for the malicious purpose of having him falsely convicted . . . ."  Compl. ¶ 31. Police officers may be liable for malicious prosecution.  See Tokuhama v. City and County of Honolulu, 751 F. Supp. 1385, 1394 (D. Haw. 1989) (holding that a city and county could be held vicariously liable under a theory of respondeat superior in an action for false arrest and malicious prosecution based on the actions of two of its police officers); see also Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002) (observing that malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed). Malicious prosecution has three elements: "(1) the prior proceedings must have been terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice."  Wong, 111 Haw. at 478, 143 P.3d at 18. In this case, the evidence presented suggests that Plaintiff's malicious prosecution claim is made against Officer Takehara. That is, Plaintiff has only come forward with evidence that Officer Takehara acted with malice as Plaintiff appears to allege that the police report was falsified "to cover up the fact that [he] had committed an illegal assault upon [Plaintiff]. . . ." Compl. ¶ 31.  Accordingly, the Court finds Plaintiff's malicious prosecution claim is made against Officer Takehara, and the City may only be held liable under a theory of respondeat superior for Officer Takehara's actions.  If Plaintiff disagrees with this interpretation of his malicious prosecution claim, he may file a motion for reconsideration within the appropriate time frame.

established good cause for failing to effect timely service."
Panaras v. Liquid Carbonic Industries Corp., 94 F.3d 338, 340-41
(7th Cir. 1996).   Thus, the questions before the Court are (1)
whether the Court should grant Plaintiff's request to consolidate
this case with the case before Judge Seabright; and (2) whether
Plaintiff has shown good cause to extend the deadline to serve
Officer Takehara.   Unless one of these requests are granted,
Officer Takehara's motion to dismiss should be granted.   Because
consolidating the two cases would moot Plaintiff's request for an
enlargement of time to serve Officer Takehara, the Court will
address Plaintiff's request for consolidation first.

        In opposition to the Officers' Motion to Dismiss,
Plaintiff requests that the Court consolidate this case with the
case before Judge Seabright filed on March 29, 2010.   Plaintiff
explains that "the statute of limitations of two years under the
Hawaii State Law on this particular case . . . [expired on] March
29, 2010."   Pl's Opp. to Officers' Mot. to Dismiss at 2.   Thus,
because Plaintiff has not served Officer Takehara to date,
Plaintiff "had no choice but the [sic] file a new complaint
against the Defendant police officers only . . . which would
necessitate against a continuance of the trial and new deadlines
for [Plaintiff] to perfect service."   Id.

        In reply, Officer Takehara argues that the motion to
consolidate should be denied because he would be substantially

prejudiced otherwise.[30/]  Officers' Reply at 3.  Specifically, he

argues that he would be prejudiced in that he has not had the

"benefit of legal counsel while this action has proceeded, that

there might be prejudice to [him] from collateral estoppel issues

if the new action is allowed to proceed against [him], and that

the cause of this situation, and any fault therefrom, lies

entirely with Plaintiff or his counsel . . . ."  Id.  Officer

Takehara notes that Judge Chang already found in his 2/24/10

Order that Officer Takehara would be prejudiced if Plaintiff were

granted additional time in which to serve him.[31/]

        The standard of consolidation of two civil cases is

governed by Fed. R. Civ. P. 42(a) ("Rule 42(a)"), which provides:

> If actions before the court involve a common
> question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters
> at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary
> cost or delay.

Fed. R. Civ. P. 42(a).  Thus, Rule 42(a) is designed to

encourage consolidation where a common question of law or fact is

---

[30/] According to Officer Takehara, however, he has only been aware of Plaintiff's Complaint since January or early February 2010.  Officers' Opp., Takehara Decl. ¶ 5.

[31/] In Judge Chang's 2/24/10 Order, however, Judge Chang's finding of prejudice regarding Plaintiff's second ex parte motion for an enlargement of time took into account the fact that "[t]he failure to serve Defendant Takahara [sic] is now a matter to be addressed by Judge Kay on May 3, 2010."  2/24/10 Order.

present.  Arroyo v. Cardon, 90 F.R.D. 603, 605 (D.P.R. 1981).
Trial courts have broad discretion under Rule 42(a) in deciding a
motion to consolidate.  See A.J. Indus., Inc. v. United States
District Court for the District of Cal., 503 F.2d 384, 389 (9th
Cir. 1974); see also Perez-Funez v. District Director, INS, 611
F. Supp. 990, 994 (C.D. Cal. 1984) ("A court has broad discretion
in deciding whether or not to grant a motion for consolidation,
although, typically, consolidation is favored.").  "The district
court, in exercising its broad discretion to order consolidation
of actions presenting a common issue of law or fact under Rule
42(a), weighs the saving of time and effort consolidation would
produce against any inconvenience, delay, or expense that it
would cause."  Huene v. United States, 743 F.2d 703, 703 (9th
Cir. 1984).

        Both Rule 42(a) and Rule 4(m) are to be interpreted
with concerns for judicial economy in mind as courts have
recognized that after a court dismisses a complaint without
prejudice under Rule 4(m), a plaintiff can file a new action and
move to consolidate, assuming the second action is not time
barred.  See Chemehuevi Indian Tribe v. Wilson, 181 F.R.D. 438,
440 (N.D. Cal. 1998) (noting that dismissal under Rule 4(m) may
bring a case full circle at some point as "plaintiffs can . . .
file a new action against the [dismissed] defendants and move to
consolidate . . . and serve them in compliance with Rule 4(m)");

see also De Tie v. Orange County, 152 F.3d 1109, 1111 n.5 (9th

Cir. 1998) (noting that if good cause is not shown to extend the

deadline for service under Rule 4(m), courts should consider

whether the applicable statute of limitations would bar the

refiled action); Television Signal Corp. v. City and County of

San Francisco, No. C-99-2081, 2000 WL 1022962, at *1 (N.D. Cal.

July 11, 2000) ("The order dismissed the case without prejudice,

based on a finding that plaintiff failed to comply with FRCP

4(m).  Plaintiff is entitled to file a new action, assuming it is

not time barred.").[32]

_____

[32] Officer Takehara argues that the motion to consolidate
should be denied because "[t]he law does not permit a plaintiff
two bites at the same apple."  Officers' Reply at 5.  Rule 4(m),
however, entitles a plaintiff to file a new action after
dismissal for insufficient service of process, assuming that the
new action is not time barred.  See Fed. R. Civ. P. 4(m) ("If a
defendant is not served within 120 days after the complaint is
filed, the court--on motion or on its own after notice to the
plaintiff--must dismiss the action without prejudice against that
defendant or order that service be made within a specified
time.").  The Seventh Circuit has explained, "[i]f good cause is
shown, the court shall extend the time for service of an
appropriate period . . . . If, however, good cause does not
exist, the court may, in its discretion, either dismiss the
action without prejudice or direct that service be effected
within a specified time."  Panaras, 94 F.3d at 340-41 (emphasis
in original).  In this case, pending the resolution of the
Plaintiff's Motion for an Enlargement of Time, Plaintiff filed a
second action against Officer Takehara on March 29, 2010, the
last day before the statute of limitations period ended.  Thus,
Plaintiff is entitled to pursue his claim against Officer
Takehara in the separate action, assuming he is timely served
with the new complaint in accordance with Rule 4(m).
     Further, the Court rejects Officer Takehara's claim that any
subsequent action against Officer Takehara would be barred by res
judicata because dismissal for insufficient service of process
                                              (continued...)

Applying Rule 42(a), consolidation is appropriate in this case because the two cases involve <u>identical</u> questions of fact, and consolidation would not result in a great amount of inconvenience, delay, or expense.  Indeed, as noted above, the only claims that remain against the City are based on respondeat superior liability, as the Court has dismissed all of Plaintiff's claims against the City based on § 1983.  Thus, judicial economy would be greatly promoted by consolidating the two cases, because otherwise the Court and the parties would have to proceed with two identical trials.  <u>See</u> <u>Arroyo</u>, 90 F.R.D. at 605 ("The purpose of a consolidation for trial is to avoid: 1) overlapping trials containing duplicative proof; 2) excess cost incurred by all parties and the government; 3) the waste of valuable court time in the trial of repetitive claims; and 4) the burden placed on a new judge in gaining familiarity with the cases." (citation omitted)).  Because judicial economy would be greatly promoted in this instance, the Court should grant consolidation unless it

---

[32]/(...continued)
would not constitute a "final judgment on the merits."  <u>See</u> <u>Hydranautics v. FilmTec Corp.</u>, 204 F.3d 880, 885 (9th Cir. 2000) (noting that a decision by a federal court only has preclusive effect where "the first proceeding ended with a final judgment on the merits").  Therefore, the question before this Court is not whether Plaintiff should be permitted to pursue his claims against Officer Takehara, but whether consolidation of the two cases promotes judicial economy, and would not result in unreasonable delay.

would result in a great amount of inconvenience, delay, or expense.  See Huene, 743 F.2d at 703.

The trial in this case is scheduled to begin on July 13, 2010.  At the hearing, the City represented that it would be ready for trial on this date.  Tr. 21:3-6.  Also at the hearing, Plaintiff agreed to withdraw his claims against Officer Eagle. Id. 20:2-11.  Further, the City has agreed to make Officer Takehara available for service upon his being deposed.   Id. 21:22-25, 22:1.  Thus, the question becomes whether Officer Takehara could begin trial on July 13, 2010.

Officer Takehara has been aware of Plaintiff's Complaint since January or early February 2010.  Officers' Opp., Takehara Decl. ¶ 5.  The City's counsel has indicated that HPD officers are afforded representation by the City in most cases, and the Court believes it likely that Officer Takehara will be afforded representation in this case.  Tr. 22:3-11.  Indeed, the City's counsel presently represents Officer Takehara in another action before this Court.  See Walls v. Takehara, Civ. No. 10-00073 ACK-KSC.

Moreover, the Court has concluded that there are genuine issues of material fact as to whether Officer Takehara acted with actual malice, and therefore he is not presently entitled to a qualified privilege as to Plaintiff's state law claims made against him.  Similarly, although the issue is not

presently before the Court, the Court notes that there would similarly be genuine issues of material fact as to whether Officer Takehara is entitled to federal qualified immunity.  The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In deciding whether an official is entitled to qualified immunity, a court must first inquire whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001).  If answered affirmatively, the next step is to consider whether the right was "clearly established" at the time the alleged violation occurred, and if so, whether a reasonable official could have believed his or her conduct was lawful.  Id.  In this case, Officer Takehara would not be entitled to qualified immunity at the summary judgment stage because, viewing the evidence in a light most favorable to Plaintiff, Officer Takehara's conduct would have violated clearly established constitutional rights, and a reasonable officer could not have believed such conduct to be lawful.  Thus, it does not

53

appear that Officer Takehara would be prejudiced by not being able to file a dispositive motion in this matter.

As such, the Court finds that judicial economy will be greatly furthered by consolidating these two cases involving identical issues of fact, and that consolidation will only potentially result in minor delays or prejudice.  Accordingly, the Court grants Plaintiff's Motion for Consolidation.  It is ordered that all further pleadings shall be filed and docketed in Civ. No. 09-00130 ACK-KSC.  An entry shall be made in the docket of Civ. No. 10-00173 ACK-KSC indicating that all further filings relevant to Civ. No. 10-00173 ACK-KSC shall be filed only in Civ. No. 09-00130 ACK-KSC.

Further, the Officers' Motion to Dismiss for Insufficient Service of Process and Plaintiff's Motion for an Enlargement of Time to Serve Officer Takehara are denied as moot.

## CONCLUSION

In light of the foregoing, the Court:

(1) GRANTS the City's Motion for Judgment on the Pleadings as to any claims for punitive damages against the City;

(2) GRANTS IN PART, and DENIES IN PART, the City's motion for summary judgment.  Specifically, the Court grants summary judgment in favor of the City as to Plaintiff's constitutional claims asserted via § 1983.  The Court, however, denies summary judgment with respect to Plaintiff's state law

claims asserted against the City based on a theory of respondeat superior.  The Court finds that there are genuine issues of material fact as to whether Officer Takehara acted with actual malice.  In addition, the Court finds that there are genuine issues of material fact as to whether Officer Takehara had probable cause to arrest Plaintiff;

(3) GRANTS Plaintiff's Motion to Consolidate.  The Court finds that consolidation is appropriate given that these two cases involve identical issues of fact;

(4) DENIES Plaintiff's ex parte motion for an enlargement of time to serve Officer Takehara as moot; and

(5) DENIES Officers Takehara and Eagle's Motion to Dismiss for Insufficient Service of Process as moot.

The trial date of July 13, 2010, remains as originally scheduled.  The discovery deadline shall be extended from May 14, 2010, to June 7, 2010, to enable Plaintiff to depose and serve Officer Takehara and to allow Officer Takehara's counsel to conduct discovery.  Various other pretrial deadlines will be modified, as more fully set forth in a separate scheduling order accompanying this Order.

As a result of this Order, the following claims remain for trial: (1) First and Fourth Amendment Claims under § 1983

(Count I)[33/], insofar as they are asserted against Officer Takehara; (2) Equal Protection Claim Under § 1983 (Count II), insofar as a "class of one" claim is asserted against Officer Takehara; (3) False Arrest (Count III), insofar as it is asserted against Officer Takehara; (4) Malicious Prosecution, insofar as a state law claim for malicious prosecution is asserted against Officer Takehara; (5) Wanton and Reckless Conduct (Count V), insofar as it is asserted against Officer Takehara; (6) Assault and Battery (Count VI), insofar as it is asserted against Officer Takehara; (7) Respondeat Superior (Count VII), insofar as it asserted against the City based on Officer Takehara's alleged state law violations; and (8) punitive damages allegations, inasmuch as Plaintiff advances a claim against Officer Takehara in his individual capacity[34/] for punitive damages that is derivative of another remaining count of the Complaint.

---

[33/] At the hearing, Plaintiff withdrew the portion of his Fourth Amendment claim that asserted a "right to Due Process and Equal Protection of the Law," that was dismissed by the Court's 8/24/09 Order.  However, Plaintiff's Fourth Amendment claim alleging an unreasonable search and seizure remains. Specifically, Plaintiff's Fourth Amendment claim appears to include claims for unlawful arrest, excessive force, and malicious prosecution.

[34/] Punitive damages are not available against Officer Takehara in his official capacity as this would be akin to a claim for punitive damages against the City itself.  See Kentucky, 473 U.S. at 167 n. 13; see also Lauer, 57 Haw. at 402, 557 P.2d at 1342.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 7, 2010.



_____
Alan C. Kay
Sr. United States District Judge

Matubang v. City and County of Honolulu, et al., Civ. Nos. 09-00130 ACK-KSC &
10-00173 ACK-KSC:  Order (1) Granting the City's Motion for Judgment on the
Pleadings with Respect to Any Claims for Punitive Damages Against the City,
(2) Granting in Part, and Denying in Part, the City's Motion for Summary
Judgment as to the Remaining Claims, (3) Granting Plaintiff's Motion to
Consolidate Two Civil Cases, (4) Denying Plaintiff's Motion for an Enlargement
of Time to Serve Officer Takehara, and (5) Denying Officers Takehara and
Eagle's Motion to Dismiss for Insufficient Service of Process